# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SALES BENCHMARK INDEX LLC** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH DEROSA and I2C, INC.** | : | NO. 18-2680 |

### MEMORANDUM OPINION

**Savage, J.**                                                                                                                  August 16, 2018

Plaintiff Sales Benchmark Index LLC (SBI) brings claims for breach of employment agreement (Count I), breach of fiduciary duties (Count II), and tortious interference with prospective contractual relations (Count VIII) against its former employee, Joseph DeRosa. It also asserts counts for federal and state misappropriation of trade secrets (Counts III and IV), civil conspiracy (Count V), and conversion (Count IX) against DeRosa and his new employer, i2c, Inc.[1]

DeRosa moves to dismiss Count I for breach of contract, arguing SBI has failed to state a claim for violation of the non-competition provision in his employment agreement, and Count VIII for tortious interference with prospective contractual relations because it is barred by the gist of the action doctrine. Both DeRosa and i2c move to dismiss Count V for civil conspiracy for failure to state a claim.[2]

### Factual Background

SBI is a national consulting firm specializing in marketing and sales. It delivers its consulting services through "principals," employees who advise clients and maintain

---

[1] SBI also brings counts for tortious interference with contractual relations (Count VI) and breach of contract (VII) against i2c.

[2] On July 18, 2018, we issued an order granting i2c's motion to join DeRosa's motion to dismiss Count V of the complaint. Dkt. No. 14.

client relationships.[3]   In addition to fulfilling existing contractual obligations, principals sell additional SBI services and advice to clients on issues beyond the original scope of work.[4]

In June 2016, SBI hired Joseph DeRosa as a principal.[5]   As a condition of his employment, DeRosa signed an Employment Agreement containing non-solicitation, loyalty, and confidentiality provisions.[6]   It also contained a non-competition clause, which prohibited him from directly or indirectly engaging in certain activities for a competing business.[7]

When SBI's customer, i2c, expressed dissatisfaction with SBI's work, it assigned DeRosa, a top performing principal, to the company.[8]   While providing advice to i2c, DeRosa identified new opportunities for SBI, including assisting with an executive talent search for a Senior Vice President of Sales and Marketing.[9]

On February 22, 2018, i2c's Chief Executive Officer, Amir Wain, attended a meeting with John Staples, an SBI partner.[10]   Wain told Staples that he was going to

---

[3] Notice of Removal Ex. A (Doc. No. 1-1) (Compl.) ¶¶ 8, 12.

[4] *Id.* ¶ 12.

[5] *Id.* ¶ 20.

[6] *Id.* ¶¶ 21–22.

[7] *Id* ¶ 24; Compl. Ex. A (Doc. No. 1-2) at 3, § 6.2 (Employment Agreement).

[8] Compl. ¶¶ 41–42, 46.

[9] *Id.* ¶¶ 51–53.

[10] *Id.* ¶ 60.

"steal DeRosa from SBI[.]"[11] That same month, DeRosa reported that Wain wanted him and another SBI employee to work for i2c.[12]

Afterwards, DeRosa told Staples that despite being the highest paid principal at SBI, he was dissatisfied with his salary.[13] In response, Staples suggested that DeRosa consider opportunities with other companies that were offering to pay him more.[14] At no point did DeRosa suggest he was considering employment with i2c.[15]

On March 27, 2018, DeRosa informed SBI that he intended to work at i2c as its Executive Vice President, Sales and Marketing.[16] Three days later, DeRosa resigned from SBI.[17]

**Standard of Review**

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[11] *Id.*

[12] *Id.* ¶ 61.

[13] *Id.* ¶ 62.

[14] *Id.* ¶ 64.

[15] *Id.* ¶ 63.

[16] *Id.* ¶ 65.

[17] *Id.* ¶ 66.

3

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

A court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents to the extent the plaintiff's claims are based upon them. *Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## Breach of Employment Agreement (Count I)

SBI claims DeRosa breached the non-competition, non-solicitation, loyalty, and confidentiality provisions of his Employment Agreement. DeRosa only moves to dismiss the breach of contract claim based on alleged violations of the non-compete.[18]

---

[18] Mot. to Dismiss (Doc. No. 10-1) at 6.

SBI argues DeRosa breached his non-compete by performing the same or substantially similar duties at i2c that he performed at SBI.[19] It does not allege that i2c is a competitor. Rather, SBI claims that DeRosa is the competitor because he is providing the same services in his role as an employee at i2c as he did while a principal at SBI.[20]

The Employment Agreement provides, in pertinent part, that an "Employee shall not directly or indirectly, in any Capacity, engage in Restricted Activities for a Competing Business[.]"[21] "Restricted Activities" are "work activities, duties and/or responsibilities" that are "the same as, substantially similar to, or include," the type of activities an employee had with SBI, including "sales and/or marketing advisory and/or consulting services."[22]

"Capacity" is defined as "on Employee's own behalf and/or on behalf of any other Person, owning, investing or otherwise taking a financial interest in, managing, operating, controlling, being employed by, being associated or affiliated with, providing services as a consultant or independent contractor to, and/or participating in the ownership, management, operation or control of[.]"[23]

SBI alleges DeRosa has the same or similar duties at i2c as he had at SBI.[24] It claims DeRosa, by performing or overseeing the opportunities identified for SBI, is

---

[19] SBI Resp. (Doc. No. 21) at 5.

[20] *Id.* at 4–5.

[21] Employment Agreement at 3, § 6.2.

[22] *Id.* at Addendum A, 3 ¶ 15.

[23] *Id.* at Addendum A, 1 ¶ 1.

[24] Compl. ¶ 70.

5

acting "on his own behalf" as an employee of i2c.[25] Thus, SBI alleges that DeRosa is engaged in a Restricted Activity in a defined Capacity.

Section 6.2 applies only if DeRosa[26] is working for a "Competing Business" under the Employment Agreement. A "Competing Business" is defined as:

> [A]ny Person in the business of providing sales and/or marketing advisory and/or consulting services, including businesses that supply, manufacture, produce, design, sell and/or market, as applicable, products and/or services which are the same or substantially similar to the products and/or services that [SBI] . . . supplied, manufactured, produced, designed, sold and/or marketed during the Reference Period. Businesses that engage in Competing Business include, . . . the Employee operating Employee's own business in any Capacity.[27]

The question is whether DeRosa is providing the same or substantially similar services as he did while employed at SBI for a competitor. We conclude he is not providing advisory or consulting services for a competitor. Thus, SBI cannot pursue a cause of action for breach of the non-competition provision.

SBI argues that DeRosa himself is a "Person in the business of" providing sales or marketing services, bringing him within the ambit of the non-compete provision.[28] Specifically, SBI reads the non-competition provision to restrict DeRosa from competing with SBI "on his own."[29]

---

[25] *Id.* ¶ 73; SBI Resp. at 4.

[26] The parties do not argue that i2c is a Competing Business. According to SBI, i2c "builds and provides payment technology to entities around the world." Compl. ¶ 41. SBI provides consulting services specializing in sales and marketing. *Id.* ¶ 8.

[27] Employment Agreement at Addendum A, 1 ¶ 3.

[28] SBI Resp. at 5

[29] Compl. ¶ 29.

Nowhere in the complaint does SBI allege DeRosa has his own business. Rather, SBI states DeRosa breached the non-competition provision by working for i2c as an executive.[30] Regardless of what his duties are at i2c, DeRosa is not operating his own business.

Reading the relevant definitions together, the non-compete restricts DeRosa from engaging in the same or substantially similar services as SBI, in any Capacity, for "any Person in the business of" providing sales and marketing advisory or consulting services. In other words, it prohibits DeRosa from working for another company in the business of providing advisory or consulting services. It bars DeRosa from advising or consulting about sales or marketing. He is not permitted to act as an advisor or consultant. He is not barred from working as an employee of a company that is not a competitor.

The allegations of the complaint do not show that DeRosa is personally competing against SBI in violation of § 6.2 of the Employment Agreement. Thus, SBI has not stated a claim for breach of the post-employment non-competition clause.

**Tortious Interference with Prospective Contractual Relations**
**(Count VIII)**

DeRosa aruges that SBI's tortious interference claim is barred by the gist of the action doctrine because the alleged solicitation of and interference with existing or prospective business relationships are governed by the Employment Agreement.[31]

Pennsylvania's gist of the action doctrine precludes a plaintiff from bringing what is actually a breach of contract claim as a tort claim. *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48, 60 (2014); *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238

---

[30] *Id.* ¶¶ 69, 79.

[31] Mot. to Dismiss at 9.

(Pa. Super. 2009); *see also Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010). The doctrine maintains the distinction between causes of action founded on the breach of a contractual duty created by the parties' relationship and those based on the breach of a social duty imposed on all individuals by society.

When the parties' obligations are defined by the terms of a contract and not by duties imposed by social policies, a plaintiff may assert only a contract claim. *Bruno*, 106 A.3d at 68; *Erie Ins. Exch.*, 972 A.2d at 1239 (citing *eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa. Super. 2002)). To state a tort claim where there is a contract, the wrong complained of must be the gist of the action with the contract being only incidental. *Bruno*, 106 A.3d at 66 (quoting *Bash v. Bell Tel. Co. of Pa.*, 411 Pa.Super. 347, 601 A.2d 825, 829 (1992)).

In determining whether the gist of the action is based on a contract or a tort, we look to the nature of the duty allegedly breached. *Id.* at 63. If the claim arises directly from a breach of a contractual duty created by the parties, it is a contract action. If the claim arises from the violation of a broader social duty imposed by society and not by the parties to the action, it is a tort action. *Id.* Thus, the substance of the allegations in the complaint is of "paramount importance." *Id.* at 68.

The fact that there is a contract between the parties does not necessarily mean that a party's claim for injury or loss resulting from the other party's conduct in performing the contract is a claim for breach of contract. On one hand, a breach of contract cause of action is based on the breach of a specific executory promise in the contract. *Id.* at 70. On the other hand, a tort action exists where it is alleged that the defendant breached a duty that exists "independently and regardless of the contract," one that was not created by the parties. *Id.* at 63.

In its complaint, SBI alleges DeRosa tortiously interfered with its contractual relationship with i2c by competing directly with SBI as an i2c employee.[32] SBI claims DeRosa competed with SBI and solicited SBI's customer, i2c, to do business with him, causing i2c to terminate its relationship with SBI.[33] This conduct is covered by both the non-competition and non-solicitation provisions of DeRosa's Employment Agreement.[34] *See DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 243 (E.D. Pa. 2017) (finding the gist of the action doctrine barred tortious interference claim based on the theory that defendants interfered with customer relationships because contract had non-solicitation provision).

SBI maintains its tortious interference claim is premised on DeRosa's duty of loyalty and duty to refrain from misappropriation of trade secrets, which fall outside of the contract.[35] It contends DeRosa "usurp[ed]" SBI's corporate opportunities and used SBI's proprietary information to benefit his relationship with i2c.[36] These duties are created by the contract between SBI and DeRosa.

An employee owes the employer a duty of loyalty "to refrain from competing with the principal and from taking action on behalf of, or otherwise assisting, the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014) (citing Restatement (3d) of Agency §§ 8.04, 8.05 (2006)). The

---

[32] Compl. ¶¶ 167–68.

[33] *Id.*

[34] Employment Agreement at 3, §§ 6.1–6.4.

[35] SBI Resp. at 8–10.

[36] *Id.* at 9–10.

obligations arising under a duty of loyalty are imposed not by mutual consensus but by social policies "embodied in the law of torts rather than the terms of the contract." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 620 (E.D. Pa. 2010) (citation omitted). Likewise, "the tort of misappropriation of trade secrets is based on a violation of a non-contractual duty to retain confidences, which is imposed as a matter of social policy rather than by mutual consensus." *Id.* at 624 (citation omitted).

Nevertheless, the gist of the action doctrine may bar allegations of breach of a duty of loyalty where it is a reiteration of the plaintiff's breach of contract claim. *Id.* at 621. Claims for breach of a duty of loyalty are barred by the gist of the action doctrine when they do not exist outside of the parties' contractual agreement. *DePuy Synthes*, 259 F. Supp. 3d at 235 (citation omitted). A misappropriation claim may also be barred by the gist of the action doctrine where it arises from a failure to adhere to a provision in the contract. *Brown & Brown*, 745 F. Supp. 2d at 624.

Here, DeRosa's duties of loyalty and confidentiality are covered in the Employment Agreement. Section 2.2 of the Employment Agreement creates a "contractual duty of loyalty."[37] It states, in pertinent part, that "Employee shall devote Employee's full business time and efforts to the Company and will not engage in any other employment, occupation, consulting or other activity that conflicts with the Employee's obligations to the Company."[38] A duty of confidentiality is described in § 4.2.[39] DeRosa agreed not to retain, withhold, take, use or disclose any confidential

---

[37] *See* Compl. ¶¶ 22, 32.

[38] Employment Agreement at 1, § 2.2.

[39] Compl. ¶¶ 22, 34.

10

information belonging to SBI.[40] Thus, DeRosa's duties of confidentiality and loyalty arose from the contract.

The conduct underlying SBI's tortious interference claim mirrors those underlying its breach of contract claim. SBI alleges DeRosa tortiously interfered with SBI's prospective contract for the same reasons he allegedly breached the Employment Agreement. According to the complaint, DeRosa breached his "contractual duty of loyalty" by "taking SBI's Proprietary Information for non-business purposes and . . . using it to the benefit of SBI's competitors and by usurping SBI's business opportunities."[41] SBI also alleges DeRosa "us[ed] and disclos[ed] SBI's Proprietary Information in breach of the Employment Agreement[.]"[42] In its tortious interference count, SBI claims DeRosa interfered with its prospective contractual relations by "usurping [SBI's] corporate opportunity" and using SBI's proprietary information to benefit his relationship with i2c.[43]

The tortious interference claim is merely a reiteration of the breach of the contract claim. *See, e.g.*, *Brown & Brown*, 745 F. Supp. 2d at 621 (barring claim for breach of duty of loyalty under gist of the action doctrine as a restatement of breach of contract claim where allegations regarding the duty of loyalty were all made in reference

---

[40] *See* Employment Agreement at 2, § 4.2.

[41] Compl. ¶ 97(e).

[42] *Id.* ¶ 97(f). These allegations are also alleged as part of SBI's breach of fiduciary duty claim (Count II). It alleges DeRosa breached his fiduciary duty, "including the duty of loyalty," to SBI by soliciting its customer and usurping its opportunities with i2c. *Id.* ¶¶ 107–08. SBI further alleges DeRosa breached "the individual duties he owed to SBI" by disclosing proprietary information. *Id.* ¶ 106. As the defendants have not moved to dismiss this count, we do not determine whether the gist of the action doctrine bars the breach of fiduciary duty claim.

[43] SBI Resp. at 9–11.

to the contract). Therefore, because SBI's tortious interference claim is grounded in the contract itself, it is barred by the gist of the action doctrine.

### Civil Conspiracy (Count V)

SBI alleges DeRosa and i2c engaged in a scheme to unlawfully use SBI's proprietary information and employ DeRosa in a competitive position against SBI.[44] DeRosa and i2c argue the complaint is devoid of any facts demonstrating malice or a purpose to injure SBI.[45] Instead, they maintain that i2c and DeRosa acted to realize mutual financial gain.[46]

To state a claim for civil conspiracy, the plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)); *see also Church Mut. Ins. Co. v. All. Adjustment Grp.*, 708 F. App'x 64, 70 (3d Cir. 2017). Additionally, the plaintiff must prove the defendants acted with malice, that is, with an intent to injure. *Skipworth*, 690 A.2d at 174; *Church Mut. Ins. Co.*, 708 F. App'x at 70. To state a cause of action for civil conspiracy, the plaintiff must allege facts showing that the defendants acted with the sole purpose of injuring the plaintiff. *DePuy Synthes*, 259 F. Supp. 3d at 248. Where the defendants act to advance their own business interests, malice is absent. *See id.* (dismissing civil conspiracy claim where complaint alleged that the defendants' primary aim was to benefit their own business interests); *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423–24

---

[44] Compl. ¶¶ 146–47. i2c joins in DeRosa's motion to dismiss this claim only.

[45] Mot. to Dismiss at 10.

[46] *Id.* at 10–11.

(E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) (finding no malice where plaintiff averred that "all parties reaped financial or career benefits at Plaintiff's expense" because of the alleged conspiracy).

SBI baldly alleges i2c and DeRosa acted with the specific intent to injure it. It does not allege facts showing malice. On the contrary, the complaint shows the defendants were actually seeking to benefit their own interests. According to SBI, DeRosa had expressed dissatisfaction with his compensation at SBI.[47] At i2c, DeRosa "obtained greater compensation . . . than he had or would have received from SBI[.]"[48] In turn, i2c saved money "by paying DeRosa less money as its employee than it would have paid SBI to perform the same identified Opportunities."[49] Without any specificity, the complaint indicates DeRosa disclosed SBI's proprietary information to take i2c's business relationship and opportunities for himself.[50] Without stating how, SEB alleges i2c purportedly benefited from receipt of this confidential information.[51] These allegations fall short.

In sum, the allegations show the aim of the conspiracy was to advance the defendants' economic interests and not to harm SBI. Any harm was an incidental consequence of the defendants' desire to maximize commercial gain. *See DePuy Synthes*, 259 F. Supp. 3d at 248; *Synthes*, 25 F. Supp. 3d at 736–37 (finding no malice where the purpose of the "conspiracy" was to develop a new company, but had the

---

[47] Compl. ¶ 62.

[48] *Id.* ¶ 75.

[49] *Id.*

[50] *Id.* ¶¶ 73, 76.

[51] *Id.* ¶¶ 77–78.

incidental effect of injuring the plaintiff).  Therefore, we shall dismiss SBI's claim for civil conspiracy against DeRosa and i2c.